**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WARREN ONLY, | : Hon. Faith S. Hochberg |
| Plaintiff, | : Civil No. 06-2123 (FSH) |
| v. | : |
| | : **OPINION** |
| ASCENT MEDIA GROUP, LLC, | : |
| | : Date: October 5, 2006 |
| Defendant. | : |

**HOCHBERG, District Judge:**

**I.    INTRODUCTION**

This matter is before the Court on Cross-Motions to Dismiss filed by Defendant Ascent Media Group, LLC ("Ascent Media") and Plaintiff Warren Only pursuant to Fed. R. Civ. P. 12(b)(6),[1] Plaintiff Only's Request/Motion to Strike Ascent Media's Motion to Dismiss Pursuant to Rule 56(f), and Plaintiff Only's Motion for Leave to File a Supplemental Complaint pursuant to Fed. R. Civ. P. 15(d).  The Court has made its determination after considering the written submissions of the parties and without oral argument pursuant to Fed.R.Civ.P. 78.

---

[1] This court terminated an associated case, *Ascent Media Group, LLC v. Warren Only* (No. 06-2374) on June 13, 2006 and consolidated it with this case, No. 06-2123.  Since the cases have been consolidated and Ascent Media is the Defendant and Warren Only is the Plaintiff in the consolidated case, this Court will refer to the parties as such in this Order.

1

## II.   FACTUAL BACKGROUND

Plaintiff Only is a broadcasting and telecommunications consultant with offices in New Jersey who provides satellite communication services to the broadcast and telecommunications industry, including providing uplink, downlink, payout, and internet and syndication support services.  Defendant Ascent Media is a global provider of satellite transmission and reception services for the broadcast, cable, entertainment, satellite, and telecommunications industries.  Among other services, Ascent Media coordinates the transmission and receiving of audio, video, and data signals via satellites around the world.

Mr. Only applied to Ascent Media in December 2004 for full time local loop connectivity to Ascent Media's network and Earth Station uplink facilities.[2]  Lisa Roberts, Vice President of Sales at Ascent Media, took Mr. Only's application, which contained a detailed technical floor plan and configuration of his operation, and offered to lease Mr. Only available antennas on the property at Ascent Media's Stamford "Glenn Brook" Earth Station facility.  Mr. Only submitted a credit application to Roberts in December 2004, and he was not notified of any credit problems at the time.  On December 14, 2004, Roberts sent Mr. Only a letter containing a quote for a full time port and local loop connectivity.  The letter states that "[t]his proposal is subject to availability of facilities at the time a service agreement is signed, upon the execution of a formal agreement acceptable to both parties, and receipt of required corporate approvals."

---

[2]For purposes of this Factual Background section, all facts are taken as true from Plaintiff's Amended Complaint because this Court is granting Defendant's Motion to Dismiss. *See Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977) (holding that for motions to dismiss under F.R.C.P. 12(b)(6) for failure to state a cause of action, "plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn.")

After their initial meeting, Roberts arranged a meeting between herself, a transmissions engineer, and Mr. Only in order for Mr. Only to connect to Ascent Media's Earth Station Transport System. Roberts gave Mr. Only a connectivity chart, antenna profile, and list of teleport rates, and she arranged for Mr. Only to meet with Paula Horn, another Ascent Media employee, to discuss syndication services. In February 2006, Mr. Only demanded service and offered to pay Ascent Media up front. In May 2006, Ascent Media decided not to provide common carrier services and/or communications satellite service to Mr. Only based on Mr. Only's credit application and an employee's recommendation that Ascent Media should not enter into a deal based on his previous work experience with Mr. Only.

## III.   PROCEDURAL BACKGROUND

Mr. Only filed this suit on May 10, 2006 and filed an Amended Complaint on May 12, 2006.[3] On May 24, 2006, Ascent Media filed a complaint against Mr. Only (Docket No. 06-2374). Plaintiff Only moved to dismiss Ascent Media's complaint in a motion to dismiss on June 8, 2006. On June 13, 2006, Magistrate Judge Shwartz denied Mr. Only's motion to dismiss, consolidated the two cases, and terminated Docket No. 06-2374. Magistrate Judge Shwartz issued a Report and Recommendation granting Ascent Media's request for a preliminary injunction on June 15, 2006, and this Court adopted the Report and Recommendation on September 11, 2006. This Order held that Mr. Only and any affiliates must cease and desist from (a) using, reproducing, distributing, or offering to reproduce or distribute Ascent Media's

---

[3]Plaintiff filed a Second Amended Complaint on May 31, 2006 and a Third Amended Complaint on June 2, 2006. On June 13, 2006, Magistrate Judge Shwartz struck the Second and Third Amended Complaint and ruled that the May 12, 2006 Amended Complaint is the operative complaint in this case.

Antenna Profiles and/or any portions thereof; (b) posting on Plaintiff's website the Antenna Profiles and/or any portion thereof; (c) preparing any derivative works based on the Antenna Profiles; (d) representing to the consuming public that Mr. Only is affiliated with Ascent Media and its clients; (e) instructing any other individual to engage in any of the above-described acts in subparagraphs a) through d); and (f) aiding and abetting or otherwise assisting in any of the above-described acts in subparagraphs a) through d).  The Court further ordered Mr. Only to modify the portions of his website to ensure that they do not violate any of the above restrictions.

Defendant filed a Motion to Dismiss Plaintiff's Amended Complaint and Counterclaim on July 21, 2006.  Plaintiff filed a Motion/Request to Strike Ascent Media's Motion to Dismiss Pursuant to Rule 56(f) on July 26, 2006.[4]  Plaintiff filed an Objection to Defendant's Motion to Dismiss and a Further Request to Strike Ascent Media's Motion to Dismiss Pursuant to F.R.C.P. 56(f) on August 9, 2006.[5]  Defendant filed its Consolidated Opposition and Response to Plaintiff's Recent Filings on August 14, 2006.  Plaintiff filed a Motion to Dismiss Defendant Ascent Media's Verified Complaint on August 31, 2006.[6]  Plaintiff also filed a "Motion for Leave to File Supplemental Complaints Pursuant to F.R.C.P. 15(d)" on August 31, 2006.  Defendant filed a Consolidated Opposition to Plaintiff Only's Motion to Dismiss Ascent Media's Verified Complaint and Motion for Leave to File Supplemental Complaints on September 25,

---

[4] Mr. Only also submitted additional filings related to his Motion/Request to Strike Ascent Media's Motion to Dismiss Pursuant to Rule 56(f) on July 27, 206 and August 1, 2006.

[5] Plaintiff did not specifically address Defendant's arguments in this objection or in any of the Plaintiff's other filings.

[6] As discussed above, Ascent Media's May 24, 2006 complaint against Mr. Only (Docket No. 06-2374) was terminated and consolidated with this Case on June 13, 2006.

2006.  Plaintiff filed his Reply to Ascent Media's Consolidated Opposition on October 3, 2006.

## VI. PLAINTIFF'S REQUEST/MOTION TO STRIKE ASCENT MEDIA'S MOTION TO DISMISS PURSUANT TO RULE 56(F)

Mr. Only's July 26, 2006 filing requests that this Court strike Ascent Media's Motion to Dismiss Pursuant to F.R.C.P. Rule 56(f).  Rule 56(f) states that: "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."  Mr. Only does not meet this threshold because he has not presented facts essential for his opposition to Defendant's Motion to Dismiss.  Further, Plaintiff's allegation that Defendant has already taken discovery is without merit.  In his Motion to Strike, Mr. Only appears to be claiming that Defendant has conducted discovery because of the citations in its motion to federal and state court cases with Mr. Only as a plaintiff.  However, in evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), courts may consider matters of public record, such as case law.  *See Pension Guaranty Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1992).  Furthermore, Defendant specifically disavowed relying on any document referenced in its Preliminary Statement of its Motion to Dismiss, where the cases are referenced.  The Court therefore denies Plaintiff's Motion to Strike.

## V.  DEFENDANT'S MOTIONS TO DISMISS PLAINTIFF ONLY'S AMENDED COMPLAINT AND COUNTERCLAIMS

### A.  Standard of a Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) should be granted "if it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Although a court does not need to credit a complaint's "bald assertions" or "legal conclusions," it is required to accept as true all of the allegations in the complaint as well as all reasonable inferences that can be drawn therefrom and view them in the light most favorable to the plaintiff.  *Id.*, *citing Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).  *See also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997).  In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court may consider only the Complaint, exhibits attached to the Complaint, matters of public record, and undisputedly authentic documents if the Plaintiff's claims are based on those documents.  *Pension*, 998 F.2d at 1196.

The Supreme Court has expressly stated that motions to dismiss under Rule 12(b)(6) should be granted "very sparingly" in antitrust cases.  *See Hospital Building Co. v. Trustees of Rex Hospital*, 425 U.S. 738, 746 (1976).  However, there is no heightened pleading standard in antitrust cases, and the general principles governing Rule 12(b)(6) motions apply.  *See, e.g.*, *In re Mercedes-Benz Anti-Trust Litigation*, 157 F.Supp.2d 355, 359 (D.N.J. 2001).  Further, an antitrust complaint containing only "conclusory recitations of law" is insufficient to survive a motion to dismiss.  *See In re K-Dur Antitrust Litigation*, 338 F.Supp.2d 517, 529 (D.N.J. 2004) (*citing McPherson's, Ltd. v. Never Dull, Inc.*, 1990 WL 238812, *3 (D.N.J. Dec. 26, 1990)).

**B.     Claims for Relief in Plaintiff's Amended Complaint and Counterclaim**

1.    The Amended Complaint

The Amended Complaint alleges that Ascent Media "maintains and operates a **Monopoly** of satellite Earth Station teleport Uplinks and Downlink facilities through out the United States" and that there "are no arguable competitive Earth Station facilities in the 'New York Metro Area' at present time." (emphasis in original). Mr. Only also alleges that Ascent Media conspired with its employees and subsidiaries to deny Mr. Only the use of Ascent Media's facilities and common carrier service on the basis of Mr. Only's race and a "personal vendetta." Based on these allegations, Mr. Only raises three claims for relief under Sections One and Two of the Sherman Act: 1) combining and conspiring to illegally block Mr. Only from obtaining "Common Carrier/Satellite Communications services" in violation of Section One of the Sherman Act, 15 U.S.C. §1; 2) unreasonably restraining trade by combining and conspiring to illegally block Mr. Only from obtaining "Common Carrier/Satellite Communications services" in violation of Section One of the Sherman Act, 15 U.S.C. §1; and 3) unreasonably monopolizing the market by entering into a "contract, combination or conspiracy" to unlawfully prevent plaintiff from obtaining "Common Carrier/Satellite Communications services" in violation of Section Two of the Sherman Act, 15 U.S.C. §2.

2.    The Counterclaim

In his counterclaim to Ascent Media's complaint, Mr. Only includes eight separate claims for relief. The first three claims are identical to the three claims in the Amended Complaint. Count IV, entitled "Genocide pursuant 18 U.S.C. 1901," alleges that "Ascent Media, and each of them, knowingly and willfully conspired and agreed among themselves to tortuously

or unlawfully injure Mr. Only with the specific intent to destroy, in whole or in substantial part, Mr. Only's, ethnic 'Black' racial, group." Count V alleges that Ascent Media violated 47 U.S.C. §202(a) by unlawfully discriminating against Mr. Only by blocking him from acquiring common carrier service based on his race. Count VI, entitled "False Light Invasion of Privacy," alleges that Ascent Media "invaded Mr. Only's right to privacy by publishing in court documents depicting Mr. Only as committing a Copyright Infringement" and by "falsely bringing Mr. Only...up on erroneous charges that were untrue and defamatory." Count VII, entitled "Intentional Infliction of Emotional Distress," claims that Ascent Media intentionally and maliciously published false information causing Mr. Only to suffer humiliation and mental anguish. Last, Count VIII, entitled "Common-Law Invasion of Privacy," alleges that Defendants invaded Mr. Only's right to privacy by "knowingly appropriating and using Mr. Only's business names and photographs from his websites to falsely associate his name and business with a false Copyright Infringement claim."

**C.     Analysis**

1.     Plaintiff Fails to State a Claim under the Federal Antitrust Laws

Plaintiff Only has failed to state a claim under either Section One or Section Two of the Sherman Act, 15 U.S.C. §1 and 2. As a threshold matter, in order to maintain a cause of action under the Sherman Act, plaintiffs must prove "injury of the type the antitrust laws were intended to prevent." *See Brunswick Corp. v. Pueblo Bowl-O-Mat*, 429 U.S. 477, 489 (1997). Federal antitrust laws are designed to remedy injuries to the competitive process itself, adhering to the longstanding principle that "[a]bove all, the United States antitrust laws strive to maintain competition in our domestic markets." *Turicentro, S.A. v. American Airlines Inc*., 303 F.3d 293,

305 (3d Cir. 2002). The antitrust laws "exist to protect competition, not competitors." *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 922 F. Supp. 1055, 1063 (E.D. Pa. 1996), *aff'd* 124 F.3d 430 (3d Cir. 1997). In this case, Plaintiff has not alleged that competition has been harmed by Ascent Media's alleged conduct and instead alleges harm to himself individually. Indeed, he has pled that he is not a competitor of Ascent Media. *See* Am. Compl. ¶27 (noting that Plaintiff "presented no competition whatsoever to 'Ascent'"). Plaintiff has also stated before this Court that he could have purchased equivalent service from Ascent Media's competitors. *See* Transcript of Hearing before Magistrate Judge Shwartz on June 12, 2006 ("Transcript") at 44-45 ("[T]here are other people's switches I can use, but in this case, the deal was with Ascent.") Therefore, Plaintiff has not alleged claims actionable under the Sherman Act.

Plaintiff fails to state a claim under Section Two of the Sherman Act for further reasons. First, Section Two prohibits individuals from monopolizing, attempting to monopolize, or combining or conspiring with any other person or persons to monopolize any part of the trade or interstate commerce. 15 U.S.C. §2. The offense of monopoly under Section 2 of the Sherman Act has two elements: (1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as opposed to growth or development from a superior product, business acumen, or historic accident. *See SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1062 (3d Cir. 1978) (*citing United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966)). Mr. Only has not identified a relevant market or alleged that Ascent Media may successfully monopolize the market based on its share.

Second, Mr. Only also fails to state a claim under Section Two of the Sherman Act because Ascent Media had no duty to deal with him. There is no general duty to deal, and a

9

company's refusal to do business with a potential business partner ordinarily does not give rise to a claim for relief under Section Two of the Sherman Act. *See Verizon Comms. Inc., v. Law Offices of Curtis Trinko, LLP*, 540 U.S. 398, 408 (2004). The Court has identified three exceptional circumstances where a duty may be recognized, but Mr. Only's allegations do not fall under these exceptions.[7]

Third, Mr. Only fails to state a claim under Section Two of the Sherman Act because he fails to identify the relevant market. An antitrust plaintiff has the burden of defining the relevant market, and a court may dismiss a claim for failure to do so. *See, e.g.,. Queen City Pizza, Inc.*, 922 F.Supp. at 1064. Plaintiff Only has failed to define any relevant product or geographic market and instead only makes vague references to Ascent Media's alleged "monopoly of Earth Station facilities" in the "New York Metro" area. Am Compl. ¶26.

Fourth, Plaintiff fails to allege that Ascent Media has monopoly power or is attempting monopoly power in the relevant market beyond general statements that "there are no arguable competitive Earth Station facilities in the 'New York Metro' at present" and "'Ascent' maintains a 'Monopoly' of Earth Station facilities in the area." *Id.* Courts generally do not find that a defendant company has monopoly power if it controls less than 50 percent of the given market. *See, e.g.*, *Ideal Dairy Farms v. John Labatt, Ltd.*, 90 F.3d 737, 749 (3d Cir. 1996). Mr. Only has not alleged this fact, and indeed has acknowledged that Ascent Media has many competitors from which Mr. Only could have purchased services equivalent to those he sought from Ascent

---

[7] The *Trinko* Court recognized that a "concerted" refusal to deal may violate the Sherman Act under its prior decisions, a sudden refusal to deal on fair terms following a longstanding and mutually profitable business relationship may approach the boundary of Section Two liability, and the "unavailability of access to...'essential facilities'" operated by a Sherman Act Defendant may create a limited third exception. *See Trinko*, 540 U.S. at 409-411.

Media.  *See* Transcript at 44-45, 49, 51, 58, 71-72.  Plaintiff Only also fails to state a claim for attempted monopolization because this must allege, among other requirements, "a dangerous probability of achieving monopoly power."  *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993).  Mr. Only does not allege any facts regarding Ascent Media's market share, much less whether that share is significant enough to create a dangerous probability that Ascent Media will achieve monopoly power.

Mr. Only also fails to state a claim under Section One of the Sherman Act.  Section One prohibits "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce."  15 U.S.C. §1.  To establish a civil cause of action under Section One, a plaintiff must prove four elements:  (1) that the defendants contracted, combined, or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy.  *See Arnold Pontiac-GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 572 (3d 1986).  Although Mr. Only claims that several Ascent Media entities and employees conspired among themselves to prevent his efforts to start a business, a corporate parent cannot conspire with its own subsidiaries or individual employees under Section One of the Sherman Act.  *See Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 769 and 777 (1984).  Mr. Only has therefore failed to allege an agreement constituting a conspiracy under the Sherman Act.  Mr. Only's claim that Ascent Media conspired with "some anonymous person outside of Ascent" to interfere with Mr. Only's business plan also fails to state an actionable conspiracy under Section One because the Third Circuit has held that "a

11

general allegation of conspiracy without a statement of the facts is an allegation of a legal conclusion and insufficient of itself to constitute a cause of action." *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 182 (3d Cir. 1988). *See, e.g., Garshman v. Universal Res. Holding Inc.*, 824 F.2d 223, 230 (3d Cir. 1987) (holding that the "allegation of unspecified contracts with unnamed other entities to achieve unidentified anticompetitive effects does not meet the minimum standards for pleading a conspiracy in violation of the Sherman Act.") Mr. Only has failed to meet the minimum standard here.

2.     Plaintiff Fails to State a Claim under the Communications Act

Count V of Plaintiff's Counterclaim alleges that Ascent Media refused to provide him common carrier services on the basis of Mr. Only's race in violation of Section 202 of the Communications Act. 47 U.S.C. §202(a) makes it unlawful for "any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device." Plaintiff Only fails to state a claim upon which relief can be granted because he has not alleged that he sought common carrier services from Ascent Media.

47 U.S.C. §202(b) clarifies that protected charges or services must be for "*the use of common carrier lines of communication*, whether derived from wire or radio facilities, in chain broadcasting or incidental to radio communication of any kind." (emphasis added). Plaintiff has not alleged that he sought common carrier services from Ascent Media, and instead he alleges that he "applied to defendant 'Ascent' for full time local loop connectivity to 'Ascents' network...for the distribution of content from a technical operations center controlled by Mr. Only in New York to 'Ascents' satellite teleport network via a fiber circuit controlled by

"Ascent"..." Am. Compl. ¶9. Furthermore, the price quote that Ascent Media provided Plaintiff in a December 14, 2004 letter confirms that Mr. Only sought a single terrestrial local loop.[8] The fiber local loop connection that Mr. Only requested is not for the "use of common carrier lines of communication" and thus does not meet the requirements of 47 U.S.C. §202(b).[9] The Court therefore dismisses Mr. Only's Communications Act claim.

3.      Plaintiff Fails to State a Claim for Genocide

---

[8]The December 14, 2004 letter provides service and pricing for "One (1) simplex TV1 local loop (2 audio channels) from 350 Fifth Avenue to Ascent Media 545. Ascent Media will provide management and troubleshooting of this service" and "One (1) port (2 audio channels) on the Ascent Media Network Services Router."

[9] Notably, it does not even appear that Ascent Media is a common carrier, a threshold question to fall under the Communications Act. In determining whether the court should regulate a line of communications as a common carrier, the court must "inquire, first, whether there [exists] any legal compulsion...to serve [the public] indifferently, and if not, second, whether there are reasons implicit in the nature of [the] operations to expect an indifferent holding out to the eligible user public." *Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 525 F.2d 630, 642 (D.C. Cir. 1976) ("NARUC I"). *See also Sw. Bell Tel. v. FCC*, 19 F.3d 1475, 1481 (D.C. Cir. 1994) ("If the carrier chooses its clients on an individual basis and determines in each particular case 'whether and on what terms to serve' and there is no specific regulatory compulsion to serve all indifferently, the entity is a private carrier for that particular service and the Commission is not at liberty to subject the entity to regulation as a common carrier" (*citing Nat'l Ass'n of Regulatory Util. Comm'rs v. FCC*, 533 F.2d 601, 608-09 (1976) ("NARUC II")). Ascent Media does not satisfy the first prong of this analysis because there is no law or regulation compelling it to provide fiber local loops connections indifferently or on a common carrier basis. It does not appear that Ascent Media meets the second prong of the analysis because "a carrier will not be a common carrier where its practice is to make individualized decisions, in particular cases, whether and on what terms to deal." *NARUC I*, 525 F.2d at 641. *See also V.I. Tel. Corp. v. FCC*, 198 F.3d 921, 925 (D.C. Cir. 1999) (endorsing the FCC's conclusion that an entity that "engage[s] in negotiations with each of its customers on the price and other terms which would vary depending on the customers' capacity needs, duration of the contract, and technical specifications" rather than "sell[ing] capacity...indifferently to the public" is not a common carrier).

Count IV of Plaintiff's Counterclaim, entitled "Genocide pursuant 18 U.S.C. §1091," alleges that "Ascent Media, and each of them**,** knowingly and willfully conspired and agreed among themselves to tortuously or unlawfully injure Mr. Only with the specific intent to destroy, in whole or in substantial part, Mr. Only's, ethnic 'Black' racial, group."  Mr. Only clearly does not meet the necessary elements to satisfy this claim.  18 U.S.C. §1091(a) defines genocide as an event when an individual has the specific intent to destroy, in whole or in substantial part, a national, ethnic, racial, or religious group and "(1) kills members of that group; (2) causes serious bodily injury to members of that group; (3) causes the permanent impairment of the mental faculties of members of the group through drugs, torture, or similar techniques; (4) subjects the group to conditions of life that are intended to cause the physical destruction of the group in whole or in part; (5) imposes measures intended to prevent births within the group; or (6) transfers by force children of the group to another group."  Further, Plaintiff's genocide claim is defective as a matter of law because 18 U.S.C. §1091 creates a criminal offense, not a civil cause of action.  18 U.S.C. §1092 states that nothing in §1091 shall "be construed as creating any substantive or procedural right enforceable by law by any party in any proceeding."  The Court therefore dismisses Count IV of Plaintiff's Counterclaim.

4.      Plaintiff Fails to State a Claim for False Light, Intentional Infliction of Emotional
          Distress, and Invasion of Privacy

Plaintiff brings three intentional torts in his Counterclaim alleging that Ascent Media committed "False Light Invasion of Privacy," "Intentional Infliction of Emotional Distress," and "Common-Law Invasion of Privacy" when it sued Mr. Only for copyright violation and accused

14

him of using Ascent Media's proprietary information without permission.[10] All three claims are without merit because "[a] statement made in the course of a judicial proceeding is absolutely privileged and wholly immune from liability." *Williams v. Kenney*, 877 A.2d 277, 286 (N.J. Super. Ct. App. Div. 205) (*citing Hawkins v. Harris*, 661 A.2d 284, 287-288 (N.J. 1995)). Civil liability cannot attach under any legal theory for statements made during the course of litigation. *Loigman v. Twp. Comm'n*, 889 A.2d 426, 436 (N.J. 2006) (litigation privilege provides immunity "not only from defamation actions, but also from a host of other tort-related claims"). The Court therefore dismisses Plaintiff's claims for False Light, Intentional Infliction of Emotional Distress, and Invasion of Privacy.

## V. PLAINTIFF'S MOTION TO DISMISS

Plaintiff Only's second Motion to Dismiss, filed on August 31, 2006, is both procedurally improper and also raises similar arguments that this Court has already dismissed in denying Plaintiff's June 2, 2006 Motion to Dismiss. Specifically, Plaintiff again argues that "Ascent Media had no valid copyright registration on file as it relates to this case." *Compare* Plaintiff Only's June 2, 2006 Motion to Dismiss in Docket No. 06-2374 at ¶24 *with* Plaintiff Only's

---

[10]*See* Countercl. ¶87 ("Ascent Media...without Mr. Only's consent, invaded Mr. Only's right to privacy by publishing in court documents depicting Mr. Only as committing a Copyright Infringement act..."), ¶97 ("Ascent Media clearly exposed Mr. Only to hatred, contempt, ridicule, obloquy, because it falsely depicted Mr. Only and his group as 'persons' that either unlawfully takes or copies other peoples information in an unlawful, heinous and criminal manner, who intentionally uses other peoples information, in this case riding on Ascent Media's purported prominence in an attempt to get a 'free ride' as it relates to information given by 'Ascent Media' to Mr. Only then reneged...."), and ¶105 ("Defendants, jointly or separately, with out Mr Only's consent, invaded Mr. Only's right to privacy by knowingly appropriating and using Mr. Only's business names and photographs from his websites to falsely associate his name and business with a false Copyright Infringement claim.")

August 31, 2006 Motion to Dismiss in Docket No. 06-2123 at ¶11.  Ascent Media's copyright infringement claim is proper under Section 411 of the Copyright Act.  Section 411 states that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title."  17 U.S.C. §411(a).  The requirements of section 411 are satisfied when an entity proves "payment of the required fee, deposit of the work in question, and receipt by the Copyright Office of a registration application."  *Wilson v. Mr. Tee's*, 855 F.Supp. 679, 682 (D.N.J. 1994).  As the Court has previously found, Ascent Media has satisfied the requirements of section 411.  *See* Ascent Media's Complaint at ¶10 and Exhibit B.

Further, a party may not move to dismiss a complaint that the party has already answered. *See Vassardakis v. Parish*, 36 F.Supp. 1002, 1003 (S.D.N.Y. 1941) ("Defendants' motion to dismiss is made under Rule 12(b)(6) of the Rules of Civil Procedure, which requires that such a motion shall be made before pleading if a further pleading is permitted.  The defendants have filed answers to this amended complaint so this motion to dismiss must be denied.")  Because Plaintiff Only answered Defendant Ascent Media's Complaint in Docket No. 06-2374 on June 5, 2006, he has improperly filed a Motion to Dismiss.

## VI.     PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT

Although motions for leave to amend should be granted as justice requires, a district court may deny leave to amend if the "amendment is futile or inequitable."  *Concepcion v. Resnik*, No. 05-1840, 2005 WL 1791699 (3d Cir. July 27, 2005).  A proposed amendment is futile if the complaint, as amended, would fail to state a claim upon which relief could be granted.  *See, e.g.*,

16

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. In addition to the claims already discussed above, Plaintiff Only's proposed amended complaint contains three different elements from his earlier pleadings: 1) allegations describing the markets relevant to the Defendants' antitrust claims; 2) a New Jersey Antitrust Act claim; and 3) a tortious interference claim. For the reasons discussed above, Mr. Only's supplemental complaint again fails to state a claim under federal antitrust laws. Further, because Section 56:9-18 of the New Jersey Annotated Statutes provides that the New Jersey Anitrust Act "shall be construed in harmony with ruling judicial interpretations of comparable Federal antitrust statutes," N.J. Stat. Ann §46:9-18, Plaintiff Only's attempt to state a claim under the New Jersey Antitrust act fails for the same reasons that his attempt to state a claim under the Sherman Act fails.

Plaintiff Only also fails to state a claim for tortious interference under New Jersey law. The four essential elements of a claim for tortious interference with contract or prospective business advantage include 1) a protectable right, such as a prospective or contractual relationship, and a showing that a plaintiff was in "pursuit" of business; 2) intentional interference done "with malice"; 3) a loss of the prospective gain; and 4) damage caused by the injury. *Printing Mart-Morristown v. Sharp Electronics Corp., 563 A.2d 31, 37* (N.J. 1989). A complaint must include allegations giving rise to some "reasonable expectation of economic advantage." *Id.* at 31. Although Plaintiff Only generally alleges that he "had valid contractual relationships or legitimate expectations of legally enforceable contractual or economic relationships with others," the proposed amended pleadings do not identify existing contracts of a prospective business relationship with the required specificity. *See, e.g., Patel v. Soriano*, 848 A.2d 803, 831 (N.J. Super. Ct. App. Div. 2004) and *Coast City Truck Sales, Inc. v. Navistar Int'l*

17

*Trasnp. Co.*, 912 F.Supp. 747, 773-75 (D.N.J. 1995).[11]

### VII. CONCLUSION

For the reasons stated herein, Plaintiff Only's Request/Motion to Strike Ascent Media's Motion to Dismiss Pursuant to Rule 56(f) is **DENIED**, Defendant's Motion to Dismiss Plaintiff's Amended Complaint and Counterclaim is **GRANTED**, Plaintiff's Motion to Dismiss is **DENIED**, and Plaintiff's Motion for Leave to File a Supplemental Complaint is **DENIED**. An appropriate order will issue, and Defendant Ascent Media shall submit a letter to this Court within ten days of the order advising the Court on the status of its complaint.

                                           /s/  Faith S. Hochberg

                                           **HON. FAITH S. HOCHBERG, U.S.D.J.**

---

[11] In addition to the fact that granting Plaintiff Only's Supplemental Complaint would be futile because the proposed amendments fail to state a claim upon which relief can be granted, Magistrate Judge Shwartz's June 13, 2006 Order struck Plaintiff Only's Second Amended Complaint filed May 31, 2006 and Third Amended Complaint filed June 2, 2006 and ordered that the operative complaint in this case was Plaintiff Only's Amended Complaint filed May 12, 2006.